IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAD HAMMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-737-JPG |
| ) | |
| ANGEL RECTOR, CHRISTY BROWN, ) | |
| DR. WAHL, DR. SHUTE, DR. SHAH, ) | |
| DR. BIBEY, MR. HARTMAN, K. DEEN, ) | |
| RANDY DAVIS, MR. GAETZ, ) | |
| MRS. CREWS, GINA ALLEN, ) | |
| S.A. GODINEZ, JOHN/JANE DOE, *Comm-* ) | |
| *issary Supervisor*, JOHN/JANE DOE, *Place-* ) | |
| *ment*, NURSE HILL, NURSE LANE, ) | |
| D.O.N. L. LECRONE, and GLADYSE C. ) | |
| TAYLOR, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

GILBERT, District Judge:

Plaintiff Shad Hammond, a prisoner at Pinckneyville Correctional Center, brings this pro se action pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> **(a) Screening.**— The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for Dismissal.**— On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > **(2)** seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of the plaintiff's claim, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks*, 578 F.3d at 581. At the same time, however, the factual allegations of a pro se complaint are to be construed liberally. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir.2009).

**<u>The Complaint</u>**

The Court first notes that plaintiff's complaint (Doc. 1, Exs. 1 & 2) contains over 190 pages of grievances, responses to grievances, medical records, and other documents. His actual allegations appear on pages 1–5 of Doc. 1, pages 44–62 of Doc. 1, Ex. 1, and page 71 of Doc. 1, Ex. 2. The Federal Rules of Civil Procedure require only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Thus plaintiff's various exhibits and grievances are not necessary at the pleading stage. The Court therefore **STRIKES** the additional pages and will consider only pages 1–5 of Doc. 1, pages 44–62 of Doc. 1, Ex. 1, and page 71 of Doc. 1, Ex. 2. The Court summarizes the allegations as follows:

In August 2003, plaintiff was shot with a shotgun three times in the head, neck, and back, fracturing vertebrae and paralyzing the entire right side of his body. He has been prescribed Neurontin twice daily, Ultram twice daily, and ibuprofen for any breakthrough pain. He has also been designated "physically challenged" by a physical therapist due to chronic atrophy and neuropathy on his right side. He has been assigned a low bunk and given a permit for the low gallery, an ace bandage for slight compression on his right hand to control hand movement, and a neoprene wrist wrap to support his atrophied and weakened wrist. He was assigned to the Chronic Medical Clinic for his neuropathy and pain to avoid having to pay medical copays, get prescription renewals, or get permits issued for the low bunk and other equipment needs.

In November 2009, plaintiff saw nurse practitioner Angel Rector. Rector is in charge of scheduling in the clinic, including referrals to doctors. She prescribed him 300mg Neurontin twice daily, 50 mg Ultram twice daily, and increased his ibuprofen prescription. Five months later, plaintiff told Rector he was in more pain in his pelvis, hip, and knee. He asked for X-rays and an increase in Ultram. She agreed. However, Rector forgot to renew the ibuprofen and increased the Ultram only in his morning dose, while discontinuing his evening dose. Plaintiff was left in intense pain for 18 hours each day.

In May 2010, plaintiff filled out copays for nurse sick call, but Rector ignored them and did not schedule him to see a doctor despite the pain plaintiff was in. He filed a grievance, then went to see her again. After that visit, Rector noted in plaintiff's medical record that he had no obvious handicaps and should be re-evaluated. He did not appear to be physically challenged. Yet Rector had not evaluated or tested him. After plaintiff filed grievances, Rector noted that she would change plaintiff's prescription to add an evening dose of Ultram. Nevertheless, plaintiff was still in "terrible pain" as of May 29, 2010. He needed Motrin and was given 12 Tylenols.

Again he was told he would be referred to a doctor or nurse practitioner, yet he did not see a doctor and was in severe pain. He went without Motrin for a full month.

On June 13, 2010, plaintiff paid again for nurse sick call because he was in pain and needed permits renewed for his low bunk and being physically challenged. He was referred to a doctor, but Rector never scheduled an appointment. Two days later, plaintiff found out that Rector did not renew his ibuprofen because, she said, he had complained of blood in his stools. Plaintiff says that issue had been resolved, though, a year and nine months earlier. On June 15, 2010, even though plaintiff had been referred five times to see a doctor and was in pain, Rector wrote in plaintiff's records that he did not appear to be physically challenged. She wrote that his Motrin request and requests for permits were awaiting a new physical-therapy evaluation. Plaintiff complains that Rector had not actually seen and evaluated him when she made those comments. Plaintiff says Rector was politicking with everyone in health care against him. Her influence on Christy Brown, the health-care unit administrator, could be seen in her responses to his grievances.

Plaintiff went to see a physical therapist on July 8, 2010. The therapist recommended that plaintiff remain classified as physically challenged. Plaintiff says that recommendation was signed and approved by the medical director, but that Rector made a note saying "for eval by MD," indicating she wanted to find an opinion that she agreed with. By this time, plaintiff's permits for being physically challenged (and for low bunk and low gallery) had expired.

Plaintiff saw Dr. Wahl and explained his pain and suffering, but Wahl said she could not prescribe ibuprofen because Rector informed her that plaintiff had stomach issues and blood in his stools. Wahl ordered tests to confirm that and scheduled a follow-up appointment after the

4

test results were returned. She re-issued the low-bunk permit, but Rector stopped her from issuing the other permits. The follow-up appointment never occurred.

On October 14, 2010, plaintiff was seen by Dr. Shephard, who re-issued plaintiff's physically challenged permit, reviewed all his lab work and X-rays, and prescribed Neurontin, ibuprofen, and an increase in Ultram. But before any of those medications were issued, Rector wrote in plaintiff's file that he was *not* physically challenged, only needed a low bunk, had stomach complaints, and reported blood in his stools. Much of that information was contradicted by plaintiff's lab results, which came back normal. Rector also lowered his Ultram dosage. Plaintiff had not seen or been evaluated by Rector since April 2009.

Plaintiff filed a grievance about Rector's actions and was given a new appointment, with Dr. Shute, on November 1, 2010. Shute gave plaintiff a thorough 45-minute evaluation. He increased plaintiff's Neurontin dosage and classified him as physically challenged so that plaintiff could take advantage of weight-bearing exercise equipment in the gym. And yet plaintiff found out soon afterward that his physically challenged permit was not being issued. He later found that Shute's medical records from that visit did not mention the permit.

So plaintiff filed a grievance. Brown denied it, Deen denied it, and Warden Randy Davis approved the denial. Gina Allen of the Administrative Review Board denied plaintiff's appeal because his medical issues were past the time frame. Director S.A. Godinez agreed with the ruling.

Plaintiff saw Dr. Shute again in January 2011. Plaintiff was in more pain in his pelvis, hip, and foot, which was causing him to fall. It felt like glass stabbing him under his knee cap. Shute ordered ibuprofen and scheduled plaintiff to see the physical therapist. Plaintiff was in segregation, however, and could not see the therapist. Plaintiff filed a grievance. Deen responded

that, according to Brown, plaintiff was complaining about a very old injury and that plaintiff had been seen previously by a physical therapist. Plaintiff objects that this injury and the pain was new, and that he has never had a diagnosis for his pelvis, hip, knee, and foot.

     Plaintiff says the worst event was on March 1, 2011. A nurse informed he was receiving his last dose of Neurontin and Ultram. Plaintiff was on chronic clinics and should never have run out of medication before seeing a doctor. He filed an emergency grievance on March 2. The CAO deemed it an emergency on March 8. Deen received the grievance but did not answer until after March 15, and said that plaintiff was not in any chronic clinic according to Brown. Warden Davis denied the grievance on March 24. Plaintiff saw Dr. Shute on March 15 after "two weeks of pain so unbearable [he] was vomiting, and lost 12 to 15 pounds" (Doc. 1, Ex. 1, p. 56). Shute ascribed plaintiff's weight loss to stomach problems even though plaintiff tried to explain that was not the issue. Plaintiff believes Shute meant well but was influenced by Brown and Rector.

     Plaintiff visited sick call twice in April 2011 for the pain in his pelvis, hip, knee, and foot, which had not been addressed yet. Nurse Lane said it was probably because plaintiff was a drug user. She also said it was probably degenerative and related to plaintiff's other pain issues. She told plaintiff if he paid for sick call three times that he would be scheduled to see a doctor. Lane later refused to give plaintiff Tylenol and would not refer him to a doctor. She ordered a chart review by a doctor instead. Plaintiff was in tremendous pain and was not being diagnosed.

     On April 18, 2011, plaintiff saw Dr. Shah. By then plaintiff had paid multiple times to get something done about the new pain. Shah ran his hand up plaintiff's spine and told plaintiff he was in "no pain," because plaintiff's blood pressure was good. Shah said "All is fine. You are in no pain. Have a good day."

Plaintiff tried to see a doctor in May but his appointment was canceled when the prison went on lockdown. In June, a nurse told plaintiff that Rector would not allow him to see a doctor until his follow-up appointment in October. In August, Rector denied plaintiff's renewal request for his low-bunk permit. Later that month, Shah discontinued one daily dose of Neurontin. Within two weeks, plaintiff had to see sick call for nerve pain in his hand and wrist, spasms, and muscle cramping, and his hand was clawing without the Neurontin. Shah discontinued Neurontin altogether in October. Plaintiff's symptoms worsened and he was in extreme pain. Plaintiff went back to see Shah in March 2012, but Shah made him leave and said to follow up in a month. Shah then told plaintiff he may have to go to segregation.

**Discussion**

The Court divides this pro se action into four counts based on plaintiff's allegations and the arrangement of the complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed. The designation of these counts does not constitute an opinion as to their merit.

Before moving on, the Court notes that Plaintiff names Defendants Gaetz, Hill, and Gladyse C. Taylor in the caption of his complaint. The Court is unable to ascertain what claims, if any, plaintiff has against these defendants. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir.1998). Because plaintiff has not discussed these defendants in a manner that would give them sufficient notice of his claim, they are dismissed without prejudice.

**Count 1: Deliberate Indifference to Serious Medical Needs**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106; *see also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir.2001).

The following factors are indications that a medical condition is objectively serious: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) the "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) the "presence of a medical condition that significantly affects an individual's daily activities"; or (4) the "existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (internal quotations and citations omitted).

Regarding the subjective standard of deliberate indifference, the Supreme Court stressed it is not an insurmountable hurdle:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm … . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir.2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering").

The Court finds here that plaintiff's claims against Angel Rector, Christy Brown, Dr. Shute, Dr. Shah, Dr. Wahl, and K. Deen merit further review.

But as to Warden Davis's denial of plaintiff's emergency grievance on March 24, a defendant who "rul[es] against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007). "Only persons who cause or participate in the violations are responsible." *Id.* Moreover, plaintiff had already been seen by Dr. Shute (on March 15) by the time Davis denied the grievance. "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009). Plaintiff's claim against Davis is dismissed without prejudice.

**Count 2: Grievances**

Plaintiff cites numerous instances when individuals denied or did not respond quickly enough to his grievances. He complains that Deen responded about the loss of his ace bandage and wrist wrap three months later. He believes Deen and Brown responded to many grievances in the form of a memo so plaintiff could not appeal their denials to the Administrative Review Board. Counselor Hartman did not respond to numerous grievances.

Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir.2011); *see also Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir.2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996). Accordingly, plaintiff's allegations relating to the handling of grievances fail to state a claim upon which relief may be granted. Count 2 is dismissed without prejudice.

**Count 3: Retaliation**

Plaintiff lists numerous events under "Retaliation" and "Obstruction." It is not much more than a list, though, so it is difficult to discern his claims as to each defendant.

Even actions that would not be unconstitutional in and of themselves can be valid claims under § 1983 if they were taken in retaliation for the exercise of a constitutionally protected right. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir.2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir.1987)); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir.1996) (per curiam); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir.1995).

To state a claim for retaliation, the prisoner must allege enough to put the defendants on notice so they can file an answer, which generally includes specifying the retaliatory act and the protected activity that motivated the defendants. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002); *see also McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir.2005). At the pleading stage,

the prisoner need only "give enough detail to illuminate the nature of the claim and allow defendants to respond." *George v. Smith*, 507 F.3d 605, 608 (7th Cir.2007).

Here, plaintiff alleges that on May 20, 2010, he was put in segregation and his ace bandage and wrist support were taken from him. He believes they were taken in retaliation for grievances he had filed. But he does not say who took them. Plaintiff also alleges that just a few days after he wrote to a lawyer asking for help with this case, a John or Jane Doe in the placement office moved him to an area where he did not have access to a law library. Further, on the same day, someone in the commissary told him they were out of pre-stamped envelopes, even though this was on January 4 and inventory should have been taken at the end of the last month.

With regard to these retaliation claims, until plaintiff identifies individual defendants by name, this action cannot proceed further against them. Therefore, the Court will grant plaintiff leave to amend his complaint to identify the defendants.

Plaintiff is advised that any proposed amendments or supplements to his complaint must be properly filed pursuant to Federal Rule of Civil Procedure 15(a) or (d). In addition, pursuant to Southern District of Illinois Local Rule 15.1, the proposed amendment to a pleading or amended pleading itself must be submitted at the time the motion to amend is filed. An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir.2004). Plaintiff must also re-file any exhibits he wishes the Court to consider along with an amended complaint. The Court will not accept piecemeal amendments to the original complaint. Count 3 is therefore dismissed without prejudice.

**Count 4: Denial of Access to the Courts**

The Court construes some of plaintiff's obstruction allegations as a denial of his access to the courts. Plaintiff says the prison staff made him throw out miscellaneous papers and junk, so he does not have two months' worth of medical records. He alleges this was done to prevent him from filing this lawsuit. The law library denied him copies and made him miss an appeal deadline for a grievance. It also has not given plaintiff access to his legal box. Mrs. Crews, a paralegal in the law library, told plaintiff they would arrange two times for him to use his legal box. He was only given access one time, however, despite numerous requests. Plaintiff says his counselor denied him copies of medical records for insufficient funds and the records and grievance offices would only release copies of plaintiff's grievances for a fee. Mr. Bibey, the Freedom of Information Act officer, ignored over 15 requests for records. Plaintiff says the Freedom of Information Act Office denied his requests for records twice. He believes those records would provide a more streamlined view of events.

The Constitution protects a prisoner's right of access to the courts, and state actors must respect that right by not impeding his efforts to pursue legal claims. *Lewis v. Casey*, 518 U.S. 343, 349–54 (1996); *Tarpley v. Allen County, In.*, 312 F.3d 895, 899 (7th Cir.2002); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir.2000). The right is violated when a prisoner is deprived of such access and suffers actual injury as a result. *Lewis*, 518 U.S. at 350; *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir.2009); *Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir.2007). Here, plaintiff has not shown any actual injury as a result of the above actions. He was able to file this lawsuit, so he was not prejudiced. Moreover, copies of grievances and medical records are not needed at the pleading stage. Count 4 is dismissed without prejudice.

**Pending Motions**

Plaintiff has filed a motion asking the Court to provide him with copies (Doc. 7) of the motion for copies itself and other documents. The motion is **DENIED** because plaintiff has not tendered the necessary fee for copies. As a general rule, the Clerk will mail paper copies of any document to a party only upon prepayment of the required fee. The Judicial Conference Schedule of Fees section (4) provides that a fee of $.50 per page shall apply for reproducing any record or paper.

Plaintiff has filed another motion for service of process (Doc. 8). As the Court noted in response to his earlier motion, it is not necessary for a litigant proceeding *in forma pauperis* to request service at the government's expense. The Clerk will direct service on the defendants as ordered below. Plaintiff's motion for service of process at government expense is **DENIED** without prejudice.

Plaintiff has also filed a motion to amend his complaint (Doc. 10). He asks to add more documents. It is not necessary to submit documents and exhibits at the pleading stage of a civil-rights action. Plaintiff will be free to file his exhibits at the appropriate time, such as in opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(e). Plaintiff also seeks to add a paragraph continuing his complaint. The Court's local rules, though, do not permit amendment by interlineation or by reference. *See* SDIL-LR 15.1. The Clerk is **DIRECTED** to return to plaintiff a copy of the exhibits he submitted with his motion. The motion to amend is **DENIED**.

**Disposition**

**IT IS HEREBY ORDERED** that Defendants **MR. BIBEY, MR. HARTMAN, RANDY DAVIS, MR. GAETZ, MRS. CREWS, GINA ALLEN, S.A. GODINEZ,**

13

**JOHN/JANE DOE** (commissary supervisor), **JOHN/JANE DOE** (placement), **NURSE HILL, D.O.N. L. LECRONE,** and **GLADYSE C. TAYLOR** are **DISMISSED** from this action **without prejudice**.

**COUNT ONE** shall receive further consideration.

The Clerk of Court shall prepare for Defendants **ANGEL RECTOR, CHRISTY BROWN, DR. WAHL, DR. SHUTE, DR. SHAH, K. DEEN,** and **NURSE LANE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within thirty (30) days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

It is **FURTHER ORDERED** that, if Defendants no longer can be found at the work addresses provided by Plaintiff, the employer shall furnish the Clerk of Court with Defendants' current work addresses, or, if not known, Defendants' last-known addresses. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court's files or disclosed by the Clerk.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants

or counsel. Any paper that has not been filed with the Clerk of Court or that fails to include a certificate of service will be disregarded by the Court.

It is **FURTHER ORDERED** that Defendants shall timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, Plaintiff was deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and any opposing party informed of any change in his address; the Court will not independently investigate Plaintiff's whereabouts. This shall be done in writing and not later than **seven (7)** days after a transfer or other change in address occurs. Failure to comply with this Or-

der will cause a delay in the transmission of Court documents and may result in dismissal of this action for want of prosecution. See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: September 17, 2012

*J. Phil Gilbert*
United States District Judge
