IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHAD HAMMOND, K53658, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:12-cv-00737-SMY-PMF |
| | ) | |
| ANGEL RECTOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are the Defendants' motions for summary judgment (Docs. 110 and 121). Plaintiff, an inmate with the Illinois Department of Corrections ("IDOC"), alleges that various IDOC and Wexford Health Sources, Inc. ("Wexford") employees violated his constitutional rights. United States District Judge Gilbert conducted a Merits Review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and held that Plaintiff stated a colorable claim of Eighth Amendment deliberate indifference to serious medical needs against Defendants Nurse Angel Rector, Christy Brown, Dr. Shute, Dr. Shah, Nurse Lane, Dr. Wahl, and Kimberly Deen. Defendants now seek summary judgment. For the following reasons, the Court **GRANTS** summary judgment as to Defendants Christy Brown, Dr. Wahl and Kimberly Deen, and **DENIES** summary judgment as to Defendants Angel Rector, Dr. Shute, Dr. Shah and Nurse Lane.

**Factual Background**

In 2003, Plaintiff was shot three times with a twelve gauge shotgun and, as a result, was paralyzed on the right side of his body for approximately one month (Doc. 122-1, p. 4). He eventually regained movement but continues to suffer from nerve damage, atrophy and arthritis… particularly on his right side. The incidents that give rise to this litigation occurred

1

from 2010 through 2012 while Plaintiff was housed at Pinckneyville Correctional Center (Docs. 14-15). Because Plaintiff asserts Eighth Amendment violations for a period exceeding two years, the medical records in this case are voluminous and, in some parts, difficult to read. With this information in mind, we turn to the facts of this case.

Plaintiff's IDOC medical records from Pinckneyville state that in June of 2009 Plaintiff received a low bunk / low gallery medical permission slip along with a physically challenged medical permission slip. Each medical permission slip was scheduled to last one year in duration. In late September of 2009 Plaintiff received a medical permission slip to have a splint for his right wrist, which was to last indefinitely (Doc 111-3, p. 2). On November 25, 2009, Plaintiff was examined by Defendant Nurse Practitioner Angel Rector. Prior to the examination, Plaintiff had been taking Neurontin[1], Baclofen[2] and Motrin[3] for his medical conditions. Nurse Rector then took Plaintiff off of the Baclofen and prescribed him 300 mg of Neurontin twice per day, 50 mg of Ultram[4] twice per day along with sixty 400 mg Motrin pills per month to take as needed. Plaintiff also received a 30 day Metamucil prescription (Doc 111-3, p. 2).

Medical records indicate that, from January until the end of March, 2010, Plaintiff was seen and/or treated ten times by nurses and doctors for pain, constipation, mental health evaluations and other tests. On April 27, one day after Plaintiff received a one year renewal for his wrist wrap permit, Plaintiff told Nurse Rector that he was experiencing new pain in his knee

---

[1] Neurontin is a medication "used to treat neuropathic pain; it may cause side effects including dizziness, fatigue, weight gain, drowsiness, and peripheral edema (swelling of the extremities)." It can also cause an over dose. (Affidavit of Defendant Dr. Wahl, Doc. 111-4).
[2] Baclofen is a medication "used to treat spasticity (altered skeletal muscle performance)." (Affidavit of Dr. Wahl, Doc. 111-4).
[3] Motrin (the brand name for ibuprofen) is a "non-steroidal anti-inflammatory medication used for relieving pain, helping with fever, and reducing inflammation; it may have side effects, including nausea, dyspepsia (indigestion), gastrointestinal ulceration or bleeding, raised liver enzymes, diarrhea, constipation, nosebleed, headache, dizziness, rash, salt and fluid retention, and hypertension." (Affidavit of Dr. Wahl, Doc. 111-4).
[4] Ultram is an "opiod analgesic pain medication used to treat acute and chronic pain; it may have a number of side effects, including dizziness, nausea, constipation, vertigo, headache, vomiting and somnolence (drowsiness). It is approximately as potent as codeine. It is habit forming, may interact with other medications, can be abused recreationally, and can cause an overdose." (Affidavit of Dr. Wahl, Doc. 111-4).

and hip (Doc. 122-1, p. 12). Nurse Rector then increased Plaintiff's morning Ultram dosage from 50 mg to 100 mg but discontinued his evening Ultram pill and Motrin prescription. Nurse Rector additionally issued one roll of paper tape for his wrist wrap. Her notes state:

> I/M has multiple wants [and] needs while here for clinic. Difficult to focus on clinic due to I/M constantly talking about all his need. C/O knees [and] hips hurting – wanting Metamucil, needing tape, having headaches etc.

On May 4, 2010 Plaintiff gave a note to the Health Care Unit ("HCU") stating that he was not receiving his medication, that he requested a wrist wrap and that he would like to discuss his urinalysis results. On May 8, 2010 Plaintiff was seen by LPN Boyd. Boyd wrote that he ambulated without difficulty, that his Motrin was not renewed and that he was to be placed on the MD line.

Plaintiff stated in his deposition that around this time, some degree of animosity began to develop between him and Nurse Rector. On May 20, 2010 Nurse Rector wrote a note in Plaintiff's medical records stating:

> NP NOTE: I/M last seen by [physical therapist] for eval 8/2009. Is due for re-eval of his permits, requests tape for ace wrap [and] motrin renewal in addition to his Ultram [and] Neurontin. I/M ambulates w/o difficulty. No obvious handicaps noted. Functions well enough to previously have jobs/assignmins in IDOC, working in maintenance areas, etc. – needs to be reevaluted – as he has normal level of functioning [and] does not appear to be "physically challenged" … I/M ambulates well up on exam table [without] problem. Off table [without] problem. Full ROM of all extremities. Good strength. Wrist wrap [right] wrist – appears to be of little benefit… [Assessment]: "Neuropathy." [Plan]: Physical therapist to eval (re-eval) for level of functioning – i.e., should he be considered "physically challenged?" Does he need wrist wrap? Does he need new sleeve? I/M to P/U [with] MD [after] PT eval…

Nurse Rector's note appears to be a general summary of Plaintiff's condition because Plaintiff denied at his deposition that he was seen on that date.

On May 25, 2010 there is a note from Nurse Rector stating that Plaintiff requested to have his Ultram changed from the 100mg once a day back to the 50mg twice a day. Nurse

3

Rector approved the request. On May 26, 2010 Plaintiff was seen by an LPN and he stated that his Motrin prescription had expired. Plaintiff was also seen by an LPN on May 29, 2010 and he again requested Motrin. He was given some Tylenol and referred to see a NP.

On June 13, 2010 Plaintiff was examined by an LPN in response to a request to have a low bunk permit. Records indicate that Plaintiff was to be referred to an MD or PA for the low bunk permit evaluation. Around this time, Plaintiff had filed a grievance regarding the discontinuation of his Motrin. On June 15, 2010 Nurse Rector responded by stating that she did not feel the Motrin was necessary in light of his Neurontin and Ultram and the fact that long term use of Motrin can lead to stomach problems. Nurse Rector also wrote a note on June 17, 2010 stating that Plaintiff would not be granted physically challenged status pending an examination by a physical therapist.

On July 8, 2010 Plaintiff was examined by physical therapist Dan Varel, who noted:

> [Assessment]: [Right] UE [and] LE weakness with mild synergistic tone. Impaired [right] hand coordination – mild/moderate fine motor deficit. Functionally, I think I/M would have difficulty carrying objects in each hand [with] skill – such as a tray and cup or manipulating a bar of soap in his [left] hand.
> P: Light constant compression from his wrist wraps would provide some tone management for wrist/hand skills. Although he is a higher functioning I/M with impairments I think "physically challenged" is still the most appropriate classification

(Doc. 125, Exhibits Part 1, p. 7). Despite the physical therapist's report, Plaintiff was not categorized as physically challenged, nor would he be for the remainder of his time at Pinckneyville. [5]

---

[5] The physically challenged classification affords inmates a variety privileges not given to regular prisoners. (Doc. 125, p. 15). Physically challenged inmates are allowed to use weight equipment in the Pinckneyville gym, to shop at the commissary before the other inmates and to use the shower chair in the wash facilities. Physically challenged inmates also receive leniency when in line with other inmates. For instance a physically challenged individual may not be capable of carrying their food tray and cup at the same time while in the cafeteria. With the physically challenged designation, an inmate would be allowed to drop off their tray and then reenter the line to retrieve their drink.

On August 5, 2010 Plaintiff was examined by Dr. Wahl (Doc. 111-1, p. 33).  During the examination, Plaintiff complained of pain in his back, neck and shoulders.  Dr. Wahl wrote in Plaintiff's medical records that he did not need to have a physically challenged designation or low gallery permit, but that he should receive a low bunk permit.  Dr. Wahl also arranged for Plaintiff to have a comprehensive metabolic panel.

On September 19, 2010 Plaintiff was examined by Nurse Lane.  Plaintiff complained of lower back pain and difficult urination.  Nurse Lane referred Plaintiff to the MD line and on September 22, 2010, Plaintiff was seen by Dr. Shepherd who prescribed 400 mg of Motrin and ordered a spinal x-ray.  The x-ray report states: "Three images were performed. There is no fracture or acute bony abnormality.  There are mild degenerative changes of the visualized lower thoracic spine."  These findings were conveyed to Plaintiff a few weeks later.  On October 14, 2010 Plaintiff was examined at his biannual general medical chronic clinic (Doc. 111-1, p. 41).  On this date, Plaintiff received a prescription for 300 mg of Neurontin twice per day, 100 mg of Ultram twice per day and 400 mg of Ibuprofen.  The notes from that date also state that Plaintiff was to receive a one year physically challenged permit.

On October 15, 2010, Nurse Rector reviewed Plaintiff's medical chart and discontinued the physically challenged permit.  Nurse Rector stated that "I/M does not meet criteria for physically challenged permit, this was addressed by Dr. Wahl [on] 8/5/10. I/M only needs low bunk – he has a "mild impairment [with] coordination."  She reduced Plaintiff's Ultram prescription from 100 mg twice a day to 50 mg twice a day.

On November 1, 2010 Plaintiff was examined by Dr. Shute for a "mandated evaluation re: need / lack of need for physically challenged permit."  Dr. Shute noted that Plaintiff was able to get on and off the examination table without difficulty.  Dr. Shute wrote that Plaintiff should

receive 50 mg of Ultram twice a day, 300 mg of Neurontin three times a day. He also noted in Plaintiff's medical records that he did not "see any medical need for a physically challenged permit at this point, as doing yoga is beneficial enough… Have also recommended Tai Chi as being potentially helpful." During the examination, Christine Brown entered the examination room and told Dr. Shute to "hurry up."

On January 26, 2011 Plaintiff was again examined by Dr. Shute (Doc. 111-1, p. 55). Plaintiff complained of pain in his right hip, right knee and right foot. Dr. Shute prescribed additional Motrin and continued Plaintiff on the Ultram and Neurontin. Dr. Shute also noted "Referral back to [physical therapist]?"

On March 2, 2011 Plaintiff was examined at the HCU where he complained of pain in his right hip, knee, neck and shoulder blades. On March 14, 2011 Plaintiff notified psychiatrist Dr. Srinivasaraghavan that he had not received any pain medication for two weeks. Dr. Srinivasaraghavan then consulted with Nurse Rector about the pain medication issue, and Nurse Rector indicated that Plaintiff was "extremely manipulative and trying to get pain medications." On the following day Plaintiff was examined by Dr. Shute. Plaintiff complained of nausea, vomiting and upset gastrointestinal tract. Dr. Shute noted that Plaintiff suffered from chronic low back pain and that Plaintiff requested an increased dosage of Ultram. Dr. Shute wrote that an increased dosage of Ultram was not appropriate because of Plaintiff's GI issues and "H/O PSA" (history of polysubstance abuse).

On March 16, 2011 Plaintiff was examined by physical therapist Dan Varel (Doc. 125, Exhibits Part 1, p. 8). The report states:

> Continued abnormal tone in [right] extremities with associated weakness. No objective changes in the past 2-3 years. Chronic pain complaints but no significant objective changes or functional losses. Reports being independent with exercise. No skilled therapy interventions indicated at this time.

6

Nurse Rector approved and signed the physical therapist's report the following day.

On March 29, 2011 Plaintiff was examined by a mental health counselor (Doc. 111-2, p. 11). Plaintiff told the counselor that the HCU was no longer giving him pain medication. He also said that he would like to have a job to help pass the time and that he was taking his medications as prescribed.

On April 7, 11, 14 and 18, 2011 Plaintiff was examined in the HCU. On these dates, Plaintiff complained of pain in his right side. Plaintiff stated that this pain was unlike his other chronic pain, and he thought it might be arthritic. Nurse Lane noted in the April 14 visit that Plaintiff was "very demanding about needing more pain meds." On April 18, 2011 Plaintiff was examined by Dr. Shah for the first time (Doc. 111-1, p. 63).

On the morning of May 12, 2011, Plaintiff was examined in the HCU by Nurse Lane. Plaintiff complained of pain in his right pelvis, hip, knee and upper middle back. He described his pain as "[i]t's constant – numbing, stinging, constant stabbing in my head from buckshot." Plaintiff was provided with a seven day prescription of acetaminophen tablets. Nurse Lane also noted that Plaintiff's last general medical chronic clinic occurred on October 14, 2010, and that he was in need of another general medical examination. Later that afternoon Nurse Rector reviewed Plaintiff's medical chart. Nurse Rector declined to place Plaintiff on the general medical chronic clinic. She noted that Plaintiff "does not have a 'chronic' illness as defined by IDOC standards. This I/M has frequent, various pain complaints which can be addressed through [nurse sick call] and referred to the MD as needed." On May 16, 2011, Plaintiff was back in the HCU for an examination. At that time, he reported that he "hurt all over" and he was prescribed a seven day prescription for acetaminophen tablets.

On June 5, 2011 Plaintiff was examined by Nurse Lane in the HCU (Doc. 125, Exhibits Part 7, p. 10). Plaintiff told Nurse Lane that "I hurt all over." Nurse Lane provided Plaintiff with a seven day prescription of acetaminophen tablets.

On July 27, 2011 Plaintiff began receiving Naprosyn.[6] In the month of August Plaintiff received 300 mg of Neurontin twice per day and 50 mg of Ultram once per day, along with 500 mg of Naprosyn to take as needed. That same month Plaintiff's low bunk permit was renewed for a one year period.

On September 10, 2011 Plaintiff was examined by Nurse Lane in the HCU for wrist pain. He received a seven day prescription of acetaminophen tablets. For the month that followed, Plaintiff's prescriptions consisted of 400 mg of Neurontin once per day, 50 mg of Ultram once per day and 500 mg of Naprosyn to take as needed.

On October 25, 2011 Plaintiff was examined in the HCU because he was experiencing lower back pain. He was offered but declined acetaminophen tablets. On October 28, 2011 Plaintiff was examined by Dr. Shah. Dr. Shah discontinued Plaintiff's Neurontin prescription and referred Plaintiff for physical therapy. On November 2, 2011 Plaintiff was examined by psychiatrist Dr. Van. He complained to Dr. Van that he was not getting his pain medication.

On December 5, 2011 Plaintiff was examined by physical therapist Dan Varel (Doc. 111-2, p. 8). Varel's report states that Plaintiff suffers from chronic atrophy in his right upper and lower extremities. The physical therapist noted that Plaintiff suffered from a "mild/medium fine motor/coordination deficit in right wrist/hand." The physical therapist's assessment stated "Abnormal tone in [right upper extremities] [with] fine motor deficit unchanged from previous exams. He has neoprene wrist wrap but is missing ace bandage for hand compression." He

---

[6] Naprosyn is a "non-steroidal anti-inflammatory drug used to treat pain, fever, inflammation, and stiffness." (Affidavit of Dr. Wahl, Doc. 111-4).

8

recommended that Plaintiff be given a renewed permit for his wrist brace and a new ace bandage. No other physical therapy was recommended.

Plaintiff again spoke to psychiatrist Dr. Van on December 28, 2011. Dr. Van noted that Plaintiff was upset that he was not receiving sufficient pain medication. On February 2, 2012 Plaintiff was examined by Dr. Shah (Doc. 125, Exhibits Part 8, p. 5). Dr. Shah discontinued Plaintiff's Ultram prescription and gave him a prescription for 300 mg of Neurontin.

Plaintiff was dissatisfied with the change in prescription and returned to the HCU on March 13, 2012 complaining that his current medication was not treating his pain. He stated that he experienced pain in his right pelvis, hip, knee and shoulder along with pain in both hands. Plaintiff returned to the HCU on March 15, 2012 and received a prescription for 600 mg of Ibuprofen twice a day.

On March 27, 2012, Plaintiff was examined at the HCU. Plaintiff stated "I hurt all over" and he complained of pain in his hands, wrists, pelvis and back. On March 29, 2012 Dr. Shaw conducted a follow up examination. On April 17, 2012, psychiatrist Dr. Van examined Plaintiff and noted that "[h]is major issue has been the pain on his back and that he has been requesting medication from the medical people…." (Doc. 111-2, p. 16). Plaintiff was then examined at the HCU on May 25, 2012 (Doc. 125, Exhibits Part 8, p. 14). At the exam, he was referred to see a doctor for his splint and ace wrap renewal. Later that day Plaintiff was examined by Dr. Shah, who provided Plaintiff with a renewed lower bunk permit but did not reorder the splint or wrap.

All Defendants now seek summary judgment. The IDOC Defendants (Christy Brown and Kimberly Deen) argue that they did not violate the Eighth Amendment because they reasonably relied on the doctors' medical judgment (Docs 121, 122). They also argue that they are entitled to qualified immunity. The Wexford Defendants (Angel Rector, Dr. Shute, Dr. Shah,

Dr. Wahl and Nurse Lane) argue that they were not deliberately indifferent to Plaintiff's medical condition and that they are entitled to qualified immunity (Docs. 110, 111).

## ANALYSIS

Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).

The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual punishments on prisoners. U.S. Const. amend. XIII. An inmate's punishment "must not involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, (1976).

In order to establish that a prison staffer's deliberate indifference to an inmate's medical needs violated the Eighth Amendment, the plaintiff must demonstrate subjective and objective elements of proof. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The objective component is satisfied by an "objectively serious medical condition." "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

To satisfy the subjective component, the defendant must have demonstrated "deliberate indifference" to the plaintiff's condition. *Arnett*, 658 F.3d at 751. Deliberate indifference requires a "sufficiently culpable state of mind." *Id*. This is a less demanding standard than

10

purposeful, but it requires more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draws the inference." *Id.* (internal cites and quotes omitted). However a prisoner does not have to be completely ignored to have a valid Eighth Amendment claim. *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). A prisoner who receives some treatment can still establish deliberate indifference if the treatment received is "blatantly inappropriate." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). Moreover, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

### The IDOC Defendants

Plaintiff asserts that IDOC Defendants Christine Brown and Kimberly Deen were deliberately indifferent to his medical condition in violation of the Eighth Amendment. Christine Brown has been the Health Care Unit Administrator at Pinckneyville since 2010 and oversees the day to day operations of the Pinckneyville HCU. (Doc. 122-1, p. 31) Kimberly Deen was the Pinckneyville grievance officer from 2009 through 2013 and investigated and responded to inmates' grievances. (Doc. 122-1, p. 29). Both Brown and Deen processed Plaintiff's grievances. However, neither individual is a medical professional and both would defer to the Wexford healthcare providers regarding courses of care.

Unless it is evident to a lay person that a prisoner is being mistreated or receiving no treatment at all, prison administrative employees may generally refer prisoner healthcare issues to the healthcare professionals without running afoul of a prisoner's Eighth Amendment rights.

11

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). When Plaintiff filed grievances concerning his medical care, Deen and Brown investigated the issues and confirmed that he was receiving treatment for the complained of issues. Such actions do not violate the Eighth Amendment. The Seventh Circuit recognized in *Greeno* that:

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Id.* (*quoting Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). In sum, the Eighth Amendment does not demand that Brown and Deen second guess Plaintiff's treating physicians regarding the appropriate level of care.

Plaintiff also states that Brown told Dr. Shute to "hurry up" during one of Plaintiff's medical examinations. (Doc. 122-1, p. 27). However Plaintiff never indicated that he suffered any actual harm as a result of Brown's remark. Without an injury, Plaintiff cannot recover on an Eighth Amendment deliberate indifference claim. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("For there is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic"). In another instance, Plaintiff filed a grievance because he was denied his wrist support while in the Pinckneyville segregation unit. Plaintiff's grievance was filed August 8, 2010. Later that same month, Brown drafted a memorandum directing correctional staff to return the wrist support. (Doc. 125, Exhibits part 4, p. 18). Brown investigated Plaintiff's grievance and ordered corrective action. None of Brown or Deen's conduct supports a finding of deliberate indifference. Thus, no reasonable jury could find that Brown or Deen were deliberately indifferent to Plaintiff's medical condition. Summary judgment is therefore granted in favor of these two Defendants.

**The Wexford Defendants**

The Wexford Defendants (Angel Rector, Dr. Shute, Dr. Shah, Dr. Wahl and Nurse Lane) admit for the purposes of summary judgment that Plaintiff suffered from an objectively serious medical condition. The Wexford Defendants argue, however, that their actions did not constitute deliberate indifference.

The Wexford Defendant with the least involvement in Plaintiff's medical treatment is Dr. Wahl. Dr. Wahl examined Plaintiff on August 5, 2010 in response to a grievance complaining of back pain and lack of pain medication. Dr. Wahl noted that Plaintiff suffered from neuropathy and that he experienced atrophy in his right hand. Dr. Wahl continued Plaintiff's Ultram and Neurontin prescriptions, prescribed a low bunk permit, ordered a complete blood count test, a comprehensive metabolic panel and a lab follow up. (Doc. 111-1, p. 33, Doc. 111-4, p. 1). She did not prescribe ibuprofen because Plaintiff had complained of blood in his stool. (Doc. 122-1, p. 17). She also declined to give Plaintiff a physically challenged designation. Dr. Wahl's only other involvement with Plaintiff's care at Pinckneyville consisted of an August 10, 2010 notation in Plaintiff's medical file directing that his ace bandage permit be reviewed for possible renewal.

Based on such limited involvement in Plaintiff's care, no reasonable jury could find that Dr. Wahl's conduct amounted to deliberate indifference. Plaintiff disagreed with Dr. Wahl's decisions to deny him the physically challenged designation and not provide additional pain medication, but this alone is insufficient to establish a constitutional violation. "[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Moreover, isolated occurrences of deficient medical treatment are generally insufficient to establish Eighth Amendment deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364,

1375 (7th Cir. 1997).  Dr. Wahl's brief treatment of Plaintiff in early August of 2010 does not rise to the level of Eighth Amendment deliberate indifference.  She is therefore entitled to summary judgment.

However, summary judgment would be improper for the other four Wexford Defendants.  Plaintiff's lawsuit presents a long factual history with a mishmash of allegations, but the thrust of his complaint is relatively simple— he suffers from chronic pain, nerve damage and limited mobility, and the Defendants failed to provide adequate treatment.  The Defendants gave Plaintiff some medication but it provided little relief.  Whether an inmate received an adequate dosage of painkillers is a difficult issue in many Eighth Amendment cases.  Prison healthcare providers have the unenviable task of discerning between inmates with legitimate medical issues and those who malinger.  However, unnecessarily prolonging an inmate's pain constitutes deliberate indifference and violates the Eighth Amendment.  *McGowan*, 612 F.3d at 640.

Plaintiff suffers from lumbar degenerative disc disease (Doc. 125, Exhibits Part 3, pp. 1-2), neuropathy, atrophy in his right hand and general chronic pain.  He filed grievances concerning his pain issues on many occasions.  (*See* Doc. 125, Exhibits Part 3 – Exhibits Part 9).  Plaintiff was examined by Dr. Shute on at least three occasions in late 2010 and early 2011.  Plaintiff was examined by Dr. Shah on multiple occasions from April 2011 through early 2012.  Despite these examinations, Plaintiff continued to suffer in pain.  "A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition."  *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).  When the evidence is viewed in a light most favorable to Plaintiff, a genuine dispute of material fact exists as to whether Dr. Shute and Dr. Shah were deliberately indifferent to his medical issues.

Nurse Lane also treated the Plaintiff and examined him on multiple occasions through 2011. On these occasions Plaintiff approached Nurse Lane with complaints of pain. She would generally only provide acetaminophen tables. Plaintiff would not receive a referral for the MD line until he had made three nurse sick call visits. While the "three visits policy" does not violate the Eighth Amendment by itself, pursuing an ineffective course of treatment that leads to the unnecessary suffering of pain is a violation the Eighth Amendment. Thus, there exists a genuine dispute of material fact as to whether Nurse Lane delayed or hindered Plaintiff's ability to receive proper treatment. Summary judgment is therefore improper as to Nurse Lane.

The last Defendant is Nurse Angel Rector. According to Plaintiff, Nurse Rector diminished the severity of his issues in his medical records, delayed referring him to physicians, and overall obstructed his care. Nurse Rector also labeled Plaintiff as "manipulative." Plaintiff states that Nurse Rector's hostility against him arose in the spring of 2010 in retaliation for grievances he had filed concerning his medical treatment and continued for approximately two years. As a result, Plaintiff's treatment was delayed, medical permits were denied and he endured unnecessary pain. At this stage in the litigation "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With that standard in mind, there is a genuine dispute of material fact as to whether Nurse Rector unnecessarily prolonged Plaintiff's pain. Summary judgment may not be granted in favor of Nurse Rector.

The last issue is whether the Wexford defendants are entitled to qualified immunity. "In evaluating whether a state actor is entitled to summary judgment for qualified immunity, we consider (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly

established at the time of the alleged violation." *Locke v. Haessig*, No. 13-1857, 2015 WL 3528782, at *3 (7th Cir. June 5, 2015). The two prongs may be addressed in either order. *Id.*

In the present case, the Defendants misconstrue the Plaintiff's allegations as a mere disagreement with his course of treatment. Plaintiff states that he was forced to suffer in pain as the Defendants provided inadequate treatment. It is well established that the "unnecessary and wanton infliction of pain" violates the Eighth Amendment and this includes situations where a prison doctor choses an "easier and less efficacious treatment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Moreover, a reasonable jury could conclude that the Defendants delayed the Plaintiff's treatment and chose a less efficacious course of treatment. The Defendants' defense of qualified immunity therefore fails.

## CONCLUSION

Plaintiff suffers from several serious medical conditions and received a great deal of medical attention for those conditions at Pinckneyville Correctional Center. Despite such medical attention, he states that he continued to suffer in pain. The issue of whether the Defendants unnecessarily prolonged Plaintiff's pain should be addressed by the jury. The Court therefore DENIES summary judgment for Defendants Angel Rector, Dr. Shute, Dr. Shah and Nurse Lane. The Court GRANTS summary judgment for Defendants Christy Brown, Dr. Wahl and Kimberly Deen.

**IT IS SO ORDERED.**

**DATE: August 19, 2015**          /s/   Staci M. Yandle
                                   **STACI M. YANDLE**
                                   **DISTRICT JUDGE**